**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

MAURICE MONTEZ CURRIE,

          Petitioner,

vs.

JERRY BURT,

          Respondent.

No. 06-CV-183-LRR

**ORDER**

---

## *TABLE OF CONTENTS*

I.       **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.     **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
     *A.*     *Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
     *B.*     *Direct Appeal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
     *C.*     *State Post-Conviction Relief* . . . . . . . . . . . . . . . . . . . . . . . . **4**
     *D.*     *Federal Post-Conviction Relief* . . . . . . . . . . . . . . . . . . . . . . **5**

III.    **FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

IV.    **STANDARDS OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
     *A.*     *Requirements under 28 U.S.C. § 2254(d)* . . . . . . . . . . . . . . . . . **12**
     *B.*     *Exhaustion/Procedural Default* . . . . . . . . . . . . . . . . . . . . . . **15**
     *C.*     *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . **18**

V.      *REQUEST FOR AN EVIDENTIARY HEARING* . . . . . . . . . . . . . . . . **20**

VI.    **DISCUSSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**
     *A.*     *Insufficient Evidence to Support Conviction* . . . . . . . . . . . . . . . **21**
           *1.*     *Exhaustion/Procedural Default* . . . . . . . . . . . . . . . . . . . **22**
           *2.*     *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**
     *B.*     *Iowa District Court Erred—Joint Criminal Conduct Instruction* . . . **23**
           *1.*     *Exhaustion/Procedural Default* . . . . . . . . . . . . . . . . . . . **24**

        2. *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *28*

  C. **Ineffective Assistance of Trial Counsel—Eyewitness Identification**
        **Expert** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *30*

        1. **Exhaustion/Procedural Default** . . . . . . . . . . . . . . . . . . . *31*

        2. *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *32*

        3. **Motion for an Evidentiary Hearing—Eyewitness**
        **Identification Expert** . . . . . . . . . . . . . . . . . . . . . . . . *34*

  D. **Ineffective Assistance of Trial Counsel—False Testimony** . . . . . . . *36*

        1. **Exhaustion/Procedural Default** . . . . . . . . . . . . . . . . . . . *37*

        2. *Merits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *38*

**VII.** **CERTIFICATE OF APPEALABILITY** . . . . . . . . . . . . . . . . . . . . . . . *40*

**VIII.** **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *41*

## I. INTRODUCTION

On December 26, 2006, Petitioner Maurice Montez Currie ("Petitioner") submitted an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Application") (docket no. 1-3). In his Application, Petitioner challenges the legality of his conviction for robbery in the first degree. Jerry Burt ("Respondent"), in his capacity as Warden of the Anamosa State Penitentiary, resists Petitioner's Application. This matter is before the court on Petitioner's Merits Brief (docket no. 19), Respondent's Merits Brief (docket no. 23) and Petitioner's Reply Brief (docket no. 28-2). Also before the court is Petitioner's Motion for Two Weeks to File a Motion for Evidentiary Hearing (docket no. 29); Respondent's Notice of Additional Authority (docket no. 30), Petitioner's Motion for Hearing on Eyewitness Identification Issue ("Motion") (docket no. 31), Supplemental Reply to Respondent's Notice of Additional Authority (docket no. 32), Respondent's Resistance to Motion for Evidentiary Hearing (docket no. 33) and Petitioner's Supplemental Request for Advance Authorization for Expert, Investigative, or Other Services (docket no. 34).

## II. PROCEDURAL BACKGROUND

### A. Trial

On December 18, 2001, in the Iowa District Court for Hardin County ("Iowa District Court"), Petitioner was charged with robbery in the first degree, in violation of Iowa Code sections 711.1, 711.2, and 703.2. *See State v. Currie*, No. FECR010696 (Hardin County Dist. Ct. 2001).[1] With respect to pre-trial matters, trial matters, post-trial matters and sentencing matters, attorney James Beres represented Petitioner. On May 29, 2002, trial commenced. On June 3, 2002, the trial concluded and a unanimous jury found Petitioner guilty of robbery in the first degree. Petitioner filed a motion in arrest of judgment and a motion for new trial on July 3, 2002, which the State resisted. Petitioner argued he was entitled to a new trial due to newly discovered evidence, improper and prejudicial jury instructions and inadequately corroborated testimony. On July 19, 2002, the Iowa District Court held a hearing on the post-trial motions. On August 2, 2002, the Iowa District Court overruled Petitioner's motions. On August 26, 2002, the Iowa District Court sentenced Petitioner to not more than twenty-five years in prison and restitution in the amount of $3,217.

### B. Direct Appeal

On August 26, 2002, Petitioner filed a notice of appeal. Attorney Patricia Reynolds represented Petitioner on appeal. In his appellate brief, Petitioner argued: (1) the record contained insufficient evidence to support his conviction; (2) the Iowa District Court erred in submitting a joint criminal conduct instruction when the evidence did not support it and again erred when it refused to grant a new trial; (3) the Iowa District Court erred in admitting into evidence a gun found at the residence of Petitioner's girlfriend, Erin

---

[1] Iowa state court criminal and civil records may be accessed at the following address: http://www.judicial.state.ia.us/Online_Court_Services/. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (addressing court's ability to take judicial notice of public records).

3

Buechler; and (4) ineffective assistance of trial counsel. On December 10, 2003, the Iowa Court of Appeals affirmed Petitioner's conviction on the first three grounds, but preserved select claims falling under the fourth ground for post-conviction relief. *See State v. Currie*, No. 02-1335, 2003 WL 22898772 (Iowa Ct. App. Dec. 10, 2003). Petitioner filed an application for further review with the Iowa Supreme Court on December 10, 2003, and, on March 19, 2004, the Iowa Supreme Court denied the application. On April 5, 2004, procedendo issued.

### C. State Post-Conviction Relief

On June 24, 2004, Petitioner filed a pro se Application for Post-Conviction Relief pursuant to Iowa Code chapter 822 and received a court-appointed attorney, Merrill Swartz. *See Currie v. State*, No. PCCV079557 (Hardin County Dist. Ct. 2004). An amended Application for Post-Conviction Relief was filed on October 11, 2005. In his Application for Post-Conviction Relief, Petitioner claimed that he received ineffective assistance when trial counsel failed to perform an essential duty that caused prejudice. Specifically, Petitioner claimed that trial counsel provided ineffective assistance when he: (1) failed to interview or depose Gregory Metzen before trial; (2) failed to call an expert witness regarding the unreliability of eyewitness identification, particularly due to trans-racial identifications and the unusual lineup procedure; (3) failed to object to incidents of hearsay during the trial; (4) allowed Petitioner to provide false testimony regarding who committed the robbery; and (5) failed to ask Robert Mosley about allegations of drugs found in his room at the time of the robbery or to depose Robert Mosley's then-girlfriend, Jane Andrew, on the subject. With respect to those five claims, Petitioner contends that trial counsel denied him effective assistance within an objective standard of reasonableness. Further, Petitioner claimed that newly discovered evidence warranted revocation of his conviction or sentence.[2]

---

[2] In support of a new trial, Petitioner offered the testimony of Jane Andrew, Robert
(continued...)

On October 12, 2005, the Iowa District Court held a hearing on the Application for Post-Conviction Relief. On November 30, 2005, the Iowa District Court denied Petitioner's Application for Post-Conviction Relief. The Iowa District Court concluded that Petitioner failed to establish "by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) that prejudice resulted therefrom." PCR Appeal Appendix at 343.

On December 16, 2005, Petitioner filed a Notice of Appeal regarding the Iowa District Court's denial of his Application for Post-Conviction Relief. Attorney Lawrence B. Cutler represented Petitioner on appeal. On September 7, 2006, the Iowa Court of Appeals affirmed. Finding "that none of [Petitioner's claims were] meritorious," it upheld the Iowa District Court's decision on both the issue of ineffective assistance of counsel and the newly discovered evidence provided by Jane Andrew. *Currie v. State*, No. 05-2107, 2006 WL 2560767, at *6 (Iowa Ct. App. Sept. 7, 2006). On September 27, 2006, Petitioner filed an application for further review, and, on November 7, 2006, the Iowa Supreme Court denied his application. On November 20, 2006, procedendo issued.

### D. Federal Post-Conviction Relief

On December 26, 2006, Petitioner filed the instant Application. In his Application, Petitioner asserts multiple grounds as a basis for relief under 28 U.S.C. § 2254. Those grounds are as follows: (1) the record contained insufficient evidence to support Petitioner's conviction ("Ground 1"); (2) the Iowa District Court erred in submitting a joint criminal conduct instruction when the evidence did not support its submission and

---

[2](…continued)
Mosley's former girlfriend and Petitioner's now-friend, "that Robert Mosley admitted that drugs were seized by the police when they searched his room in connection with this robbery . . . [and] that Robert Mosley received a deal not to be prosecuted for the seizure of the drugs in exchange for his testimony against [Petitioner]." PCR Appeal Appendix at 294. At a new trial, Petitioner suggests that this testimony would impeach Robert Mosley. However, the State denied that drugs were found in the search or that Robert Mosley received any formal deal in exchange for his testimony.

erred again when it failed to order a new trial ("Ground 2"); (3) Petitioner received ineffective assistance when trial counsel failed to obtain an expert in eyewitness identification ("Ground 3"); and (4) Petitioner received ineffective assistance when trial counsel allowed him to provide false testimony ("Ground 4"). The court appointed attorney John Jay Rausch to represent Petitioner.

On February 26, 2007, Respondent filed an Answer. On August 2, 2007, Petitioner filed a brief on the merits with his substitute counsel, Gregory F. Greiner. In his Merits Brief, Petitioner renewed the claims made in his Application. Additionally, Petitioner specifically argues that the Iowa District Court's submission of the joint criminal conduct instruction "severely infected the trial" such that "the resulting conviction violated due process." Petitioner's Merits Brief (docket no. 19) at 7-8.

On September 21, 2007, Respondent filed a Merits Brief. In his Merits Brief, Respondent argues that Petitioner's claims are procedurally defaulted and/or do not merit relief under 28 U.S.C. § 2254.

On November 15, 2007, Petitioner submitted a Reply Brief with newly appointed counsel, Rockne Cole. In his Reply Brief, Petitioner continues to pursue all of his claims. However, Petitioner attempts to combine the argument he makes in Ground 2, regarding the joint criminal conduct instruction, with his original sufficiency of the evidence claim in Ground 1. Petitioner does so because he believes the joint criminal conduct instruction claim "is properly characterized as a due process sufficiency of the evidence issue." Petitioner's Reply Brief (docket no. 28-2) at 13. He also asserts that the joint criminal conduct instruction claim is not procedurally defaulted and that he is entitled to relief on the newly-joined Grounds 1 and 2, as well as Ground 4. With regards to Ground 3, Petitioner asks the court to postpone consideration of the issue until the court rules on his Motion and Supplemental Request for Advance Authorization for Expert, Investigative, or Other Services.

On November 16, 2007, Petitioner filed a Motion for Two Weeks to File a Motion for Evidentiary Hearing. On November 21, 2007, Respondent filed a Notice of Additional Authority to address portions of Petitioner's Reply Brief, since Petitioner attempted to "transmogrify his state court arguments into a federal due process claim in his habeas merits briefing" without making a due process claim in his Application. Respondent's Notice of Additional Authority at 1. On the same date, Petitioner filed his Motion and Supplemental Reply to Respondent's Notice of Additional Authority. On November 28, 2007, Respondent filed a Resistance to the Motion. On December 13, 2007, Petitioner filed a Supplemental Request for Advance Authorization for Expert, Investigative, or Other Services.

Having concluded that the case is fully submitted and ready for decision, the court now turns to consider it.

### III. FACTUAL BACKGROUND [3]

On December 11, 2001, Karen Heiden arrived to work at the Ellsworth Community College bookstore in the Kruse Main building. It was book "buyback" week, and her first customer, Jonathan Harrell, a friend of Petitioner, sold back some of his textbooks for cash. Moments after Jonathan Harrell left the store, Karen Heiden saw a black hand slip through the door, turn off the lights, exit, and return aiming the end of a shiny gun at her. The man told her not to turn around or look at him, and, then, he entered the room, took a cashbox containing $3,217 and left. While Karen Heiden did not see the robber, she could estimate that he was five feet, ten inches tall; Petitioner is approximately that height.

Karen Heiden called for help and then went to instructor Greg Metzen's nearby office where he and a student, Laith Hassan, were speaking. As Laith Hassan traveled to

---

[3] The facts and evidence are summarized in the light most favorable to the verdict. *See Hendricks v. Lock*, 238 F.3d 985, 986 (8th Cir. 2001); *Copeland v. Washington*, 232 F.3d 969, 971 (8th Cir. 2000); *Mallet v. Bowersox*, 160 F.3d 456, 458 (8th Cir. 1998). When relevant, additional facts are discussed in the court's analysis.

Greg Metzen's office that morning, he had encountered a "huge" African-American man outside Kruse Main. Laith Hassan later identified the man as Robert Mosley, Jr., Petitioner's roommate. While it did not seem Robert Mosley wanted Laith Hassan to go inside, he did not physically prevent Laith Hassan from doing so. Laith Hassan entered Kruse Main and headed down the stairs toward Greg Metzen's office and the bookstore. He also saw another man standing and watching at the building's other doors, opposite the side Laith Hassan entered. As he walked down the stairs, Laith Hassan heard a door close below and the metal-on-metal sound of a gun chambering a round. Continuing down the stairs, Laith Hassan saw a man wearing a reflective, dark coat and a ski mask with holes for the eyes and mouth come toward him. The man started up the stairs, stopped and looked at Laith Hassan for a few seconds, and, then, he ran the other way.

The same day, Laith Hassan looked at a photo lineup of five men, but Petitioner's photo was not among them. Laith Hassan thought one of the African-American men in the photos could have been the man he saw, but he did not think he saw the robber in the lineup. At a second photo lineup, which included Petitioner's photo, the police cut a piece of paper into a replica of the mask Laith Hassan saw the robber wearing. They proceeded to place it over the photos from the first lineup as well as new photos the police added. Laith Hassan identified Petitioner in the second lineup.

Ed Geitz, who teaches and coaches at Ellsworth Community College, also saw Jonathan Harrell and Tommie Powell, another friend of Petitioner, around the time of the robbery. Ed Geitz noted that at approximately 8:50 or 8:55 a.m., he saw Tommie Powell enter Kruse Main, "looking side to side" while he walked. Trial Transcript at 231. At 9:00 or 9:05 a.m., Ed Geitz saw Tommie Powell leave Kruse Main, looking around him in the same manner.

The police later talked to Jonathan Harrell and searched his room, after determining that he was the first customer in the bookstore that morning. Jonathan Harrell denied being involved, but stated that he saw Petitioner and Robert Mosley around the north

entrance while he was in Kruse Main that morning. Petitioner, Jonathan Harrell recalled, was wearing all black, including a black coat, and some kind of black cap rolled up on his head. Jonathan Harrell also said that, once he returned to his room after selling back his books, he encountered Petitioner at the exit of the dorm, looking tired, breathing heavily and no longer wearing his coat or rolled up cap.

Later on the morning of the robbery, Nikki Juhl, another friend of Petitioner, drove Petitioner, Tommie Powell, and Robert Mosley to a Casey's store. She and Petitioner remained in the car, and, when Nikki Juhl turned to him in the backseat, she saw Petitioner with a large stack of twenty-dollar bills. Since Petitioner owed her money, she asked him to repay his debt, which he did. Nikki Juhl testified that he had never paid her in the past "because he never had the money." Trial Transcript at 292.

On December 12, 2001, Robert Mosley spoke with the police and allowed them to search the room he shared with Petitioner. While the officers were there, Robert Mosley showed them a Wal-Mart bag holding two ski masks. One of the masks had one large hole exposing the face, which he identified as his own. The other mask had three holes, one for the mouth and two for the eyes. The second mask, which Robert Mosley told them was not in the bag earlier, belonged to Petitioner.

On December 13, 2001, Robert Mosley confessed his involvement in the robbery to a professor, who contacted the police. Robert Mosley told the officers that he took part in the robbery with Petitioner, Jonathan Harrell, Tommie Powell, and another friend, Jabre Norwood. However, Robert Mosley attempted to minimize his level of participation in the crime.

According to Robert Mosley, the facts of the robbery were as follows:

> Petitioner discussed robbing the bookstore with him, Tommie Powell, Jonathan Harrell and Jabre Norwood while in their dorm room on the night of December 10, which was the same date that Petitioner had to borrow $300 to get his car out of the repair shop. Petitioner told them that the idea to rob the bookstore came to him when he sold his books back earlier

that day in the bookstore, which was run by one woman who controlled a great deal of money. Petitioner gave each man a role to play in the robbery. Jonathan Harrell was to be the scout, Robert Mosley would watch one exit, Tommie Powell would be a look-out at the other exit and Jabre Norwood would be the get-away driver.

Robert Mosley stated that, on the morning of the robbery, he went down to Kruse Main and waited, but he was given no instructions regarding what to do if people entered the building. After a while, Robert Mosley returned to his dorm and, as he waited by the dorm's main door, Jabre Norwood drove up and took him to Tommie Powell's house to meet others who were involved in the crime. At Tommie Powell's house, Robert Mosley saw Petitioner counting what looked like a great deal of money and Petitioner's gun sitting on the table. According to Robert Mosley, Petitioner told the men that "he went in and flipped a switch and nobody [saw] him. He said he got away clean and grabbed the money, went out the back way." Trial Transcript at 75. Robert Mosley received $300, while Petitioner had the largest stack. After going to the Casey's store, Robert Mosley stated Petitioner later talked about calling his girlfriend, Erin Buechler, to pick him up and take him to Des Moines. Erin Buechler did arrive that afternoon, and she took Petitioner back to Des Moines.

Robert Mosley saw Petitioner again on December 12, 2001 when Petitioner returned to town with his girlfriend. However, Robert Mosley believed Petitioner looked different and was wearing new clothes. He recalled Petitioner telling him he bought a new $400 X-Box.[4]

Also on December 13, 2001, police searched Jabre Norwood's room and found a ski mask and coat matching the description Laith Hassan provided of what the robber

---

[4] Jane Andrew corroborates Robert Mosley's testimony regarding the events that took place on December 12, 2001. Jane Andrew also testified that she saw Petitioner and Erin Buechler that evening. Jane Andrew recalled seeing Petitioner wearing new clothes and recounted how Erin Buechler asked her if she knew whether Petitioner committed the robbery because he had spent about one thousand dollars buying new clothes and an X-Box.

wore. They also traveled to Des Moines to search Erin Buechler's home, which is where Petitioner was arrested and later charged with robbery in the first degree. According to one of the arresting officers, Petitioner was wearing new clothes and shoes, had a bandage covering a new tattoo, and possessed a new X-Box game system. Additionally, police recovered a gun and ammunition in Erin Buechler's house. When an officer asked her if Petitioner gave her the gun, Erin Buechler hesitated before answering that a friend gave it to her, but she refused to give the name. She also could not swear it had not recently been removed from her house. However, she told police the X-Box belonged to one of Petitioner's friends. In addition, on December 14, 2001, police located the cashbox from the bookstore under an ice machine in the basement of the dorm where Petitioner resided.

Contrary to the previous evidence, Petitioner testified at his jury trial as follows:

> Petitioner stated that his brother gave him the money to fix his car, he sold back his books for $82 and, on the night of December 10, he won $150 gambling with friends in his room. The day of the robbery, Petitioner said he got up between 7:15 and 7:30 a.m., drove around in his car and smoked marijuana. Around 8:45 or 9:00 a.m., Petitioner claimed he stopped at Demetrious Merryweather's[5] house and returned to his dorm at 10:15 a.m. Marquez Lewis, another friend of Petitioner who testified on his behalf, confirmed this timeline. Petitioner stated that, after returning to his room, he found Jabre Norwood who drove him to Tommie Powell's house; Robert Mosley was also there. Later, Nikki Juhl drove them to the Casey's store, where he was able to pay his debt out of the money he had won from gambling the night before.
>
> Petitioner disputed claims that he purchased new clothes shortly after the robbery. He also stated that he did not get a new tattoo, but merely had touch-up work done on one he already had. Petitioner testified that the X-Box belonged to one of his friends. Petitioner denied taking part in the crime or knowledge of the robber's identity.

---

[5] The spelling of Mr. Merryweather's first name is unclear based upon the record.

The jury found Petitioner guilty of robbery in the first degree, and the Iowa District Court sentenced Petitioner to up to twenty-five years in prison.

## IV. STANDARDS OF REVIEW

### A. Requirements under 28 U.S.C. § 2254(d)

Title 28, United States Code, section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, "[28 U.S.C. §] 2254(d) distinguishes between two types of erroneous decisions—those of law and those of fact—and treats each in separate subparagraphs." *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir. 2001). Claims of legal error are governed by the first subparagraph while claims of factual error fall within the second subparagraph. *See id.* at 1029-30.

Under 28 U.S.C. § 2254(d)(1), a state prisoner may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court only through a showing that the state court's decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. The Supreme Court's opinion in *Williams v. Taylor*, 529 U.S. 362 (2000), explains the meaning of those statutory concepts and the degree of deference that must be afforded to state court determinations on the merits in federal habeas corpus proceedings concerning state prisoners. *See Newman v. Hopkins*, 247 F.3d 848, 850-52 (8th Cir. 2001)

12

(discussing effect of *Williams*); *Siers v. Weber*, 259 F.3d 969, 972-73 (8th Cir. 2001) (same); *see also Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004) (stating only limited and deferential review of underlying state court decisions in habeas corpus cases is permitted).

Under *Williams*, a state-court decision can be "contrary to" Supreme Court precedent in one of two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams*, 529 U.S. at 405. Further, "the [statutory] phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. at 412.

An "unreasonable application" of Supreme Court precedent can also arise in one of two ways. The Supreme Court explained:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id*. at 407 (citing *Green v. French*, 143 F.3d 865, 869-70 (4th Cir. 1998)). Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involving an unreasonable application of . . . clearly established Federal law.'" *Id*. at 407-08. Notably, however,

> [u]nder [28 U.S.C.] § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas [corpus] court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable*.

*Id.* at 411 (emphasis added).

Applying these standards to the present case, the court's inquiry must be whether the Iowa courts reached a decision contrary to that reached by the Supreme Court on a question of law, or alternatively, whether the Iowa court correctly identified the applicable principles of federal law and then unreasonably applied that law to the facts of Petitioner's claims. *See, e.g., Rousan v. Roper*, 436 F.3d 951, 955-56 (8th Cir. 2006) (discussing applicable standard); *Newman*, 247 F.3d at 850-52 (same); *Weaver v. Bowersox*, 241 F.3d 1024, 1029-30 (8th Cir. 2001) (same); *Closs v. Weber*, 238 F.3d 1018, 1020 (8th Cir. 2001) (same); *Copeland v. Washington*, 232 F.3d 969, 973 (8th Cir. 2000) (same).

"Claims of factual error are subjected to the standard enunciated in [28 U.S.C.] § 2254(d)(2); [28 U.S.C. §] 2254(e)(1) then establishes a presumption of correctness in favor of state court findings of fact."[6] *Weaver*, 241 F.3d at 1030; *see Cooley v. Burger*, 170 Fed.Appx. 997, 998 (8th Cir. 2006) (using § 2254(d)(2) to consider the petitioner's sufficiency of the evidence claim). Accordingly, the court's review presumes that the Iowa courts found the facts correctly unless Petitioner rebuts that presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Weaver*, 241 F.3d at 1030

---

[6] Title 28, United States Code, section 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

("[O]n habeas [corpus] review, we accord state trial courts broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings . . ."). "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver*, 241 F.3d at 1030.

Petitioner seeks relief under the 28 U.S.C. § 2254(d)(1) and § 2254(d)(2). He contends that the Iowa courts' decisions regarding each of his four claims were contrary to, or involved an unreasonable application of, clearly established federal law, and the Iowa courts' rulings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," that is, Petitioner claims there was insufficient evidence to support his conviction. 28 U.S.C. § 2254(d).

### B.  Exhaustion/Procedural Default

A petitioner, before obtaining federal habeas corpus review of his or her state confinement, must first "exhaust" his or her federal claims in the appropriate state forum. 28 U.S.C. § 2254(b)(1).[7] A petitioner has exhausted his or her state remedies when he or she has provided the highest state court with a full and fair opportunity to consider all the claims before presenting them to the federal court. *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Miller v. Lock*, 108 F.3d 868, 871 (8th Cir. 1997); *Ashker v. Leapley*, 5 F.3d

---

[7] Title 28, United States Code, section 2254(b)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
> (A) the applicant has exhausted the remedies available in the courts of the State, or
> (B) (i) there is an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

1178, 1179 (8th Cir. 1993); *McDougald v. Lockhart*, 942 F.2d 508, 510 (8th Cir. 1991); *see also* 28 U.S.C. § 2254(c).[8]  In Iowa, exhaustion requires a petitioner to seek discretionary review from the Iowa Supreme Court after the Iowa Court of Appeals rejects an appellate argument.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999) (concluding that the exhaustion doctrine requires a petitioner to seek discretionary review when that review is part of the ordinary appellate review procedure) (abrogating *Dolny v. Erickson*, 32 F.3d 381 (8th Cir. 1994)); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (reiterating that a petitioner "must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim").

The fair presentment component of the exhaustion requirement compels a petitioner to affirmatively:

> refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.

*Ashker*, 5 F.3d at 1179 (quotations and citations omitted); *accord Thomas v. Wyrick*, 622 F.2d 411, 413 (8th Cir. 1980).  A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas corpus application have been properly raised in the prisoner's state court proceedings.  *Keithley v. Hopkins*, 43 F.3d 1216, 1217 (8th Cir. 1995); *Flieger v. Delo*, 16 F.3d 878, 884 (8th Cir. 1994); *see also Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8 (1992) (full and fair presentment of claims to the state court requires "full factual development" of the claims

---

[8] Title 28, United States Code, section 2254(c) provides:

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(c).

in that forum); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement.").

"The purpose of the fair presentation component of the exhaustion requirement is to give state courts the first opportunity to review federal constitutional issues and to correct federal errors made by the state's trial courts." *Laws v. Armontrout*, 834 F.2d 1401, 1412 (8th Cir. 1987); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (same). A "petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of the opportunity to address those claims in the first instance." *Clay v. Norris*, 485 F.3d 1037, 1039 (8th Cir. 2007) (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).

The failure to exhaust a claim in state court sometimes implicates the independent and adequate state ground doctrine. *See Gray v. Netherland*, 518 U.S. 152, 161 (1996); *Coleman*, 501 U.S. at 732. Specifically, the Supreme Court explained:

> 28 U.S.C. § 2254(b) bars the granting of habeas corpus relief "unless it appears that the [petitioner] has exhausted the remedies available in the courts of the State." Because "this requirement . . . refers only to remedies available at the time of the federal [application for a writ of habeas corpus]," *Engle v. Isaac*, 456 U.S. 107, 126, n.28 (1982), it is satisfied "if it is clear that [the petitioner's] claims are now procedurally barred under [state] law," *Castille v. Peoples*, 489 U.S. 346, 351 (1989). However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence[ and, thus,] prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default. *Teague v. Lane*, [489 U.S. 288, 298 (1989)]; *Isaac*, [456 U.S.] at 126, n.28, 129; *Wainwright v. Sykes*, 433 U.S. 72, 90-91 (1977).

*Gray*, 518 U.S. at 161-62. Apart from showing good cause for his or her failure to present the claims in state court and actual prejudice as a result of the alleged constitutional

violation, a petitioner may have a procedurally defaulted claim reviewed if he or she can demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2002); *Hatcher v. Hopkins*, 256 F.3d 761, 763 (8th Cir. 2001); *Keithley*, 43 F.3d at 1218; *Maynard v. Lockhart*, 981 F.2d 981, 984 (8th Cir. 1992); *Buckley v. Lockhart*, 892 F.2d 715, 718 (8th Cir. 1989).

### C. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defen[s]e." U.S. Const. amend. VI. Furthermore, there is a constitutional right to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Douglas v. California*, 372 U.S. 353, 356-57 (1963).

The Sixth Amendment right to effective counsel is clearly established. *See Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the United States Supreme Court explained that a violation of that right has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687; *see also Williams*, 529 U.S. at 390 (reasserting *Strickland* standard). Thus, *Strickland* requires a showing of both deficient performance and prejudice. However, "a court deciding an ineffective assistance claim [need not] address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on grounds of lack of sufficient prejudice, . . . that course should be followed." *Id.*; *see also United States v. Apfel*, 97

F.3d 1074, 1076 (8th Cir. 1996) ("[A court] need not address the reasonableness of the attorney's behavior if the [defendant] cannot prove prejudice.").

To establish unreasonably deficient performance, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The "reasonableness of counsel's challenged conduct [must be reviewed] on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. There is a strong presumption of competence and reasonable professional judgment. *Id.*; *see also United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001) (operating on the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" (quoting *Strickland*, 466 U.S. at 689)); *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (stating that broad latitude to make strategic and tactical choices regarding the appropriate action to take or refrain from taking is afforded when acting in a representative capacity) (citing *Strickland*, 466 U.S. at 694). In sum, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In other words, "the question is whether there is a reasonable probability that, absent those errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695. In answering that question, the court "must consider the totality of the evidence before the judge or jury." *Id.*

## V. REQUEST FOR AN EVIDENTIARY HEARING

In his separate Motion, Petitioner asks the court for an evidentiary hearing to develop the factual basis of his eyewitness identification expert claim, Ground 3. Apart from requesting an evidentiary hearing on Ground 3, he does not ask for an evidentiary hearing regarding any of the other grounds. For Ground 3, Petitioner relies on 28 U.S.C. § 2254(e)(2), which provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>> (A) the claim relies on—
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). Due to the limits set forth in 28 U.S.C. § 2254(e)(2), it is appropriate to deny Petitioner's request for an evidentiary hearing.[9] *See Smith v. Bowersox*, 311 F.3d 915, 921 (8th Cir. 2002) (discussing constraints on district court's discretion to hold an evidentiary hearing); *Hall v. Luebbers*, 296 F.3d 685, 700 (8th Cir. 2002) (discussing standard for conducting an evidentiary hearing under 28 U.S.C. § 2254(e)(2)); *Kinder v. Bowersox*, 272 F.3d 532, 542 (8th Cir. 2001) (finding it was proper for district court not to hold an evidentiary hearing because the petitioner did not meet the

---

[9] The merits of Petitioner's Motion will be addressed within Ground 3, Ineffective Assistance of Trial Counsel—Eyewitness Identification Expert.

requirements of 28 U.S.C. § 2254(e)(2)); *Parker v. Kemna*, 260 F.3d 852, 854 (8th Cir. 2001) (same); *Hatcher v. Hopkins*, 256 F.3d 761, 764 (8th Cir. 2001) (same); *cf. Johnston v. Luebbers*, 288 F.3d 1048, 1058-60 (8th Cir. 2002) (assuming that 28 U.S.C. § 2254(e)(2) did not bar the district court from granting an evidentiary hearing and denying the petitioner an evidentiary hearing because such a hearing would not assist in the resolution of his claim).

## VI. DISCUSSION

As previously stated, Petitioner asserts four claims: (1) the record contained insufficient evidence to support Petitioner's conviction; (2) the Iowa District Court erred in submitting a joint criminal conduct instruction when the evidence did not support its submission and erred again when it failed to order a new trial; (3) Petitioner received ineffective assistance when trial counsel failed to obtain an expert in eyewitness identification; and (4) Petitioner received ineffective assistance when trial counsel allowed him to provide false testimony. While Grounds 1, 3 and 4 were fully exhausted either on direct appeal or on appeal of the denial of his application for post-conviction relief, Petitioner's second claim was not fully exhausted in state court because the basis for the claim he makes in federal court does not mirror the claim he made in the Iowa District Court or the Iowa Court of Appeals. Moreover, all of the claims asserted by Petitioner are without merit.[10]

### A. Insufficient Evidence to Support Conviction

Petitioner contends that insufficient evidence exists to support his conviction. He alleges that his case was built on an eyewitness's identification, which was unreliable, and Robert Mosley's accomplice testimony, which was not adequately corroborated. Petitioner suggests that the State's corroborating evidence was circumstantial and not adequate to

---

[10] Despite Petitioner's failure to exhaust the remedies that are available in the courts of Iowa on his second claim, the court may address the merits of Petitioner's claim. *See* 28 U.S.C. § 2254(b)(2).

sustain his conviction. Additionally, Petitioner argues the ski masks and weapons entered into evidence were not found in his possession, and they do not constitute proof linking him to the crime. In response, Respondent explains that the standard for corroborating evidence in Iowa weighs direct and circumstantial evidence equally; both provide corroborative proof. Respondent also points out that all of the evidence and testimony regarding events before, during and after the robbery corroborate Robert Mosley's testimony. Respondent also claims that nothing Petitioner noted suggests the state court was unreasonable in ruling the evidence was sufficiently corroborative.

### 1.        *Exhaustion/Procedural Default*

During his jury trial, Petitioner moved for judgment of acquittal based on insufficiency of the evidence after the State rested its case, but the Iowa District Court found sufficient evidence existed and denied the motion. Petitioner renewed his claim of insufficient evidence on direct appeal for lack of corroborating evidence and use of a dangerous weapon. The Iowa Court of Appeals found the evidence legally adequate to support Petitioner's conviction. Petitioner asked the Iowa Supreme Court for further review on the grounds that the Iowa Court of Appeals erred in finding sufficient evidence on corroboration and use of a dangerous weapon. The Iowa Supreme Court denied the application after consideration en banc. The Iowa Supreme Court has had a full and fair opportunity to address this claim on the merits. Accordingly, the court concludes that the insufficient evidence claim is exhausted.

### 2.        *Merits*

To prevail on a claim for insufficient evidence under 28 U.S.C. § 2254, the court "must consider 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Evans v. Luebbers*, 371 F.3d 438, 441 (8th Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis omitted). The court will also "presume that the findings of fact made by a state court are correct unless the

petitioner rebuts that presumption by clear and convincing evidence." *Evans*, 371 F.3d at 441 (citations omitted). After independently reviewing all of the evidence, the court determines the evidence was sufficient for a jury to find Petitioner guilty of robbery in the first degree.

### B. Iowa District Court Erred—Joint Criminal Conduct Instruction

Petitioner contends in his Application that the Iowa District Court erred in submitting a joint criminal conduct instruction and then erred again when it failed to order a new trial. In his Merits Brief, Petitioner went on to suggest that the joint criminal conduct instruction was not supported by the evidence and, for the first time, suggested infringement of his due process rights. In his Reply Brief, Petitioner argued again that, by submitting the joint criminal conduct instruction to the jury, his federal due process rights were violated and the conviction should be overturned. In response, Respondent argues the due process claim is new and was not properly raised or exhausted in the state court system. Alternatively, Respondent claims that Petitioner was not prejudiced by the joint criminal conduct instruction and was only found guilty based upon his own criminal conduct. Respondent also argues that, even if it was error to submit the joint criminal conduct instruction to the jury, it was a harmless error.

Additionally, Petitioner suggests that Grounds 1 and 2 should be combined for present purposes. He contends that a due process argument was raised in Ground 1, the sufficiency of the evidence claim, in Petitioner's Merits Brief. Petitioner argues that, since Respondent never objected to this claim, a due process argument has been preserved on Ground 1. He attempts to ensure that Ground 2 is decided on the basis of due process by joining it to an alleged due process claim in Ground 1.[11]

---

[11] The court already examined Petitioner's claim in Ground 1 and finds that he did not make an overt due process argument to which his claim in Ground 2 can be joined. Such finding is explained more fully in the following Exhaustion/Procedural Default section.

## 1.    *Exhaustion/Procedural Default*

In Petitioner's Direct Appeal Trial Brief, he claimed that "[i]t was prejudicial error for the court to submit this instruction as it was not supported by the evidence and [the] resulting [ ] general verdict mak[es] it impossible to tell which theory the jury's verdict rested upon." Appellant's Direct Appeal Brief at 30. Again, in his Direct Appeal Reply Brief, Petitioner argued that "it was prejudicial error for the jury to receive the joint criminal conduct instruction because the instruction was not supported by the evidence." Appellant's Direct Appeal Reply Brief at 2. In its decision, the Iowa Court of Appeals did not consider whether the joint criminal conduct instruction violated Petitioner's due process rights, since no due process argument was made. Instead, the Iowa Court of Appeals examined whether the Iowa District Court erred simply by giving the joint criminal conduct instruction. The Iowa Court of Appeals determined that the Iowa District Court did not err, and Petitioner could only have been convicted based upon his own actions.

Petitioner then filed an application for further review with the Iowa Supreme Court. In such application, he maintained that "[i]t was prejudicial error for the court to submit this instruction as it was not supported by the evidence and [the] resulting [ ] general verdict mak[es] it impossible to tell which theory the jury's verdict rested upon." Direct Appeal Application for Further Review at 19. The joint criminal conduct instruction issue was not raised in Petitioner's application for post-conviction relief.

In his Application, Petitioner claims that "joint criminal conduct was not proven and should not have been included in the instructions." Application (docket no. 1-3) at 9. At no point in the Iowa court proceedings or in his initial filing in federal court did Petitioner couch his claim regarding the joint criminal conduct instruction as anything more than an error by the Iowa District Court.

Petitioner's Merits Brief raises, for the first time, the claim that the joint criminal conduct instruction violated Petitioner's federal due process rights. In his Merits Brief, Petitioner states:

> The burden of demonstrating that an erroneous instruction was
> so prejudicial that it will support a collateral attack on the
> constitutional validity of the state court's judgment is even
> greater than the showing required to establish plain error on
> direct appeal; the question in such a collateral proceeding is
> *whether the instruction by itself so infected the entire trial that*
> *the resulting conviction violated due process*, not merely
> whether the instruction was undesirable, erroneous or even
> universally condemned.

Petitioner's Merits Brief (docket no. 19) at 7-8 (citing *Guichard v. Smith*, 471 F.Supp.
784, 791-92 (E.D.N.Y. 1979)) (emphasis added). Petitioner concludes that the joint
criminal conduct instruction "severely infected the trial" and, thus, his due process rights
were violated. Petitioner's Merits Brief at 8.

In his Merits Brief, Respondent states:

> [Petitioner] now briefs . . . that it was violative of due process
> to instruct the jury regarding joint criminal conduct.

> No such claim was properly exhausted in state court
> proceedings. . . .

> [Petitioner] did raise a claim in his state court briefing that the
> [Iowa District Court] erred in submitting a joint criminal
> conduct instruction, but that claim was never characterized as
> a federal or due process claim, nor was any federal authority
> cited in support of that claim of trial court error.

Respondent's Merits Brief (docket no. 23) at 26 (citations omitted). Respondent argues
that, "[w]here–as here–a petitioner raises claims in federal court based on the same facts,
but different legal theories than relied upon in state court . . . , he has not sufficiently
presented the claims to the state courts." *Id.* at 27 (citing *Barrett v. Acevedo*, 169 F.3d
1155, 1161-62 (8th Cir. 1999)). Additionally, "Respondent notes that [Petitioner] is not
eligible to return to state court to try to raise a federal due process claim. First, any such
claim would be time-barred. Second, Iowa Code section 822.8 explicitly prohibits
piecemeal litigation. . . ." *Id.*

Respondent correctly points out that the Iowa courts did not have a full and fair opportunity to address the claim that the Iowa District Court violated Petitioner's constitutional right to due process when it submitted a joint criminal conduct instruction. Throughout his direct appeal and in his Application, Petitioner never contended that the joint criminal conduct instruction violated federal due process principles. He always maintained below that the Iowa District Court simply erred in submitting a joint criminal conduct instruction, and Petitioner raised the instant due process claim for the first time in his Merits Brief.

Petitioner did not fairly present his claim to the state courts. "To satisfy the fair presentation requirement, [the courts] traditionally demand that a habeas petitioner have presented 'the same legal theories and factual bases to the state courts.'" *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995) (quoting *Pollard v. Armontrout*, 16 F.3d 295, 297 (8th Cir. 1994)). This means, at a minimum, Petitioner "must have explicitly referred the state courts to the United States Constitution or federal case law" in his direct appeal. *Id.* In the instant action, Petitioner neither stated that the Iowa District Court's error violated the United States Constitution nor cited any federal case law demonstrating that the joint criminal conduct instruction infringed his constitutional rights. Simply arguing error, without referring the state courts to the United States Constitution or applicable federal case law, is not sufficient to suggest a federal due process matter; it does not satisfy the exhaustion requirement in this court. Given his failure to do so, Petitioner never allowed the Iowa courts a full and fair opportunity to address the joint criminal conduct instruction on due process grounds.

Further, Petitioner does not argue that he is able to pursue his new due process claim in Iowa courts, and Iowa law clearly precludes him from asserting such claim. Consequently, Petitioner's claim that the Iowa District Court erred in submitting a joint criminal conduct instruction is procedurally defaulted. Further, the court is unable to review the procedurally defaulted claim because Petitioner: (1) failed to demonstrate good

cause for his failure to present it in state court and actual prejudice as a result of the alleged constitutional violation; and (2) failed to demonstrate that the failure to review it would result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750.

In an effort to save his claim from being procedurally defaulted, Petitioner attempts, in his Reply Brief, to join Grounds 1 and 2 of his Application. Petitioner suggests that a "due process argument in Ground [1] is preserved" and the court may combine it with the newly raised due process argument in Ground 2. Petitioner's Reply Brief (docket no. 28-2) at 13. For the first time in his Reply Brief, Petitioner claims that he made an explicit due process argument in Ground 1. Apparently, this claim is based upon Petitioner's Merits Brief, which cites a federal case that addresses the standard of review for a due process claim. While it is true that Petitioner's Merits Brief refers to *Moore v. Duckworth*, 443 U.S. 713, merely citing federal case law does not alert the Iowa courts to the fact that Petitioner is claiming a constitutional violation. *Id.* at 714 (holding that a state prisoner is allowed a determination of whether the evidence against him supported a finding of guilt beyond a reasonable doubt, but refusing to remand under the circumstances of the case). The passage from *Moore* that Petitioner cites in his Merits Brief simply states the standard for sufficiency of the evidence in a federal habeas corpus proceeding; it does not constitute the explicit notice required to alert a court to a constitutional claim. Thus, the claim was not preserved because no constitutional issue was actually raised in Petitioner's Merits Brief.

Moreover, Petitioner is not allowed to combine his argument in Ground 2 with his argument in Ground 1 for the first time in his Reply Brief because this was not how the case was presented to the Iowa courts. "Before a petitioner can bring a federal habeas corpus action, he must exhaust his state remedies and present *the same legal theories and factual bases to the state courts.*" *Pollard*, 16 F.3d at 297 (citations omitted) (emphasis added). "Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett*, 169 F.3d at 1162. While

a claim comprised of Petitioner's original Grounds 1 and 2 would be based on the same underlying facts, it is presented to this court on a different legal theory than it was in the Iowa courts. The fact that the claim is similar to the original is not enough to allow the court to address the issue, since the Iowa courts were "deprived of an opportunity to address the claim [as it is now presented] in the first instance." *Id.* at 1161. The court will not address Petitioner's Ground 1 and Ground 2 as one single claim.

### 2. Merits

Alternatively, regarding the claim of error by the Iowa District Court, the court finds that relief under 28 U.S.C. § 2254(d)(1) is not warranted. "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973) (citing *Boyd v. United States*, 271 U.S. 104, 107 (1926)). "Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." *Cupp*, 414 U.S. at 147.

In this case, as Respondent pointed out in his Merits Brief, the jury was appropriately instructed on the crime of robbery in the first degree. Jury Instruction No. 26 clearly laid out the elements that the State had to prove in order for Petitioner to be found guilty. Jury Instruction No. 12 required the jury to find Petitioner not guilty if it had a reasonable doubt about Petitioner's presence at the location and time of the robbery.

Thus, taking all of the jury instructions as a whole and not simply the joint criminal conduct instruction in isolation, the instructions clearly directed that, if the jurors did not believe Petitioner took part in the crime, then they could not find him guilty. Petitioner claims that he knew nothing about the robbery and that he had an alibi for the time the robbery took place. So, based upon the evidence presented and Petitioner's own defense, the jury either had to find Petitioner actively participated in the crime or he was completely uninvolved. In finding Petitioner guilty, the jury had to follow the whole of the jury

instructions, which they are assumed to have done,[12] and they could not have found Petitioner guilty without believing he was present at the time and place of the crime and fulfilled all three of the elements of robbery in the first degree. In this case, it was only Petitioner's own conduct—being present at the time of the robbery and fulfilling the necessary elements—that led to his conviction. It is not appropriate to reverse or undo Petitioner's conviction since the joint criminal conduct instruction did not "so infect[ ] the entire trial that [Petitioner's] resulting conviction violates due process." *Cupp*, 414 U.S. at 147.

Additionally, jury instructions and their application are primarily an issue for state law. *See Louisell v. Dir. of Iowa Dept. of Corrs.*, 178 F.3d 1019, 1022 (8th Cir. 1999). Under Iowa law:

> [T]he giving of a joint criminal conduct instruction in instances in which the alleged multiple participants are either principals or aiders and abettors in the same crime does not require reversal if there is no opportunity for the defendant to have been found guilty based on anything other than his own conduct as a principal or an aider and abettor of the crime with which he is charged.

*State v. Jackson*, 587 N.W.2d 764, 766 (Iowa 1998) (citations omitted). Therefore, if it was only Petitioner's conduct or actions as an aider and abettor that led to his conviction, Iowa courts would not reverse his sentence where a joint criminal conduct instruction, not an aiding and abetting instruction, was submitted to the jury. *See Jackson*, 587 N.W.2d at 766. The Iowa Court of Appeals correctly concluded that this rule, as stated in *Jackson*, encompassed Petitioner's situation and refused to reverse the conviction. *See State v. Currie*, No. 02-1335, 2003 WL 22898772, at *6 (Iowa Ct. App. Dec. 10, 2003).

---

[12] The court "presume[s] that 'jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.'" *United States v. Harper*, 466 F.3d 634, 647 (8th Cir. 2006) (quoting *Francis v. Franklin*, 471 U.S. 307, 326 n.9 (1985)).

Nonetheless, whether or not the state court found the joint criminal conduct instruction permissible, a federal court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citations omitted). A federal court may only grant habeas relief if giving or failing to give the joint criminal conduct instruction "amounted to a 'fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure.'" *Crump v. Caspari*, 116 F.3d 326, 327 (8th Cir. 1997) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). In this case, giving the joint criminal conduct instruction does not meet *Crump*'s high standard, since it was only one instruction out of many instructions and within an entire trial of evidence.

Even assuming the state court erred, Petitioner's rights were not adversely affected. Petitioner points to nothing in his Merits Brief or his Reply Brief that suggests he has been prejudiced in any way. While the jury's general verdict does not specify whether it found Petitioner guilty as the principal or as an aider and abettor, the distinction makes no difference. Under both state and federal law, Petitioner would face the same sentence as an aider and abettor as he would for being the principal. *See* Iowa Code § 703.1; 18 U.S.C. § 2(a). Even if the Iowa District Court erred in submitting the joint criminal conduct instruction to the jury, it was a harmless error and does not warrant reversal of his conviction. Petitioner's due process rights have in no way been violated.

### C. Ineffective Assistance of Trial Counsel—Eyewitness Identification Expert

Petitioner argues that he received ineffective assistance because trial counsel failed to obtain an expert in eyewitness identification, particularly an expert in the area of trans-racial identification. In his Merits Brief, Petitioner argued that eyewitness experts are allowed in Iowa, and, since Laith Hassan, the Iraqi eyewitness in this case, provided important evidence linking him to the robbery, an expert on trans-racial identification was crucial. Respondent replied that Petitioner's trial counsel made a strategic decision to

concentrate his case differently, and Petitioner is incorrectly focusing on "what trial counsel could have done, rather than the reasonableness of what counsel in fact did." Respondent's Merits Brief at 32 (citations omitted). Additionally, Respondent argues that an expert is not required on this issue, particularly when Laith Hassan was able to provide other, accurate identifications of Robert Mosley and the mask and the jacket that the robber wore. According to Respondent, Petitioner failed to show "what testimony would have developed from any additional efforts." Respondent's Merits Brief at 33.

In his Reply Brief, Petitioner states that the record is insufficient on this ground and asks the court "to refrain from considering this issue until after it rules upon his request for an evidentiary hearing." Petitioner's Reply Brief at 33. He agrees that no real evidence has been presented to establish why an expert would have changed the case, which is the fault of Petitioner's post-conviction relief counsel who "botched" the issue.[13] Petitioner's Reply Brief at 34. Petitioner claims he cannot show the ineffectiveness of his trial counsel without providing the testimony that an eyewitness expert would have offered. In response to this request for an evidentiary hearing, Respondent argues this was a matter that "should have been pursued in state court proceedings and will be resisted." Respondent's Notice of Additional Authority at 1.

### 1.    Exhaustion/Procedural Default

On direct appeal to the Iowa Court of Appeals, Petitioner claimed trial counsel provided ineffective assistance by, among other things, failing to call an expert regarding the unreliability of eyewitness testimony. In particular, an expert would be able to provide information about the problems with trans-racial identification. The Iowa Court of

---

[13] Under 28 U.S.C. § 2254(i), Petitioner cannot receive relief based upon "[t]he ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings." Thus, Petitioner is not entitled to blame his post-conviction counsel for failure to develop the record on this issue.

Appeals preserved this issue for post-conviction relief because the record was not complete on this ground.

During post-conviction relief proceedings, Petitioner continued to claim ineffective assistance of counsel because trial counsel failed to call an expert witness. The Iowa District Court concluded that Petitioner did not fulfill either prong of the *Strickland* test for ineffective assistance of trial counsel. Petitioner then appealed, arguing that the Iowa District Court erred when it found no ineffective assistance of counsel; he claimed an eyewitness identification expert was needed to support his case. The Iowa Court of Appeals decided that trial counsel did not provide ineffective assistance to Petitioner for two reasons: (1) trial counsel was not required to present an identification expert in this case; and (2) failure to provide an expert's testimony did not affect the outcome of the case. Petitioner applied for further review of this issue with the Iowa Supreme Court, but his application was denied. The court concludes that the ineffective assistance of trial counsel for failure to retain an eyewitness identification expert is exhausted.

### 2. Merits

Petitioner has neither overcome the strong presumption that the conduct of counsel fell "within a wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, nor shown that any deficiencies in counsel's performance prejudiced his defense, *id*. at 692-94. With respect to trial counsel's actions, they fall well within the realm of reasonableness. Under *Strickland*, the court's review must be "highly deferential" without "the distorting effects of hindsight." *Id*. at 689. "A claim of ineffective assistance cannot be based on decisions that relate to a reasoned choice of trial strategy, even when it later may be shown improvident." *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995) (citing *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. 1985).

The record indicates that trial counsel was familiar with trans-racial identification problems and eyewitness identification experts, but he decided an expert was not required in this case. Since the robber wore a mask, trial counsel did not believe an eyewitness

identification expert was needed to explain the potential problem with identifying someone wearing a mask, regardless of race. This, trial counsel believed, was common sense. Trial counsel stated in his deposition that, if the robber had not been wearing a mask, he "might have considered" using an eyewitness identification expert with experience in trans-racial identification problems. PCR Appeal Appendix at 334. Additionally, at trial, Petitioner's counsel cross-examined Laith Hassan on the accuracy of his identification, since the robber wore a mask. Trial counsel made the strategic decision that the problems with identifying someone in a mask were more substantial than the problems with identifying someone of a different race, and he did not want to diminish the force of the mask argument by focusing on another identification problem he decided was less important. Given those reasons, the court concludes that the Iowa courts did not unreasonably apply federal law when they determined that trial counsel made informed and reasoned decisions regarding trial strategy. *See Strickland*, 466 U.S. at 689.

Additionally, trial counsel's actions did not prejudice Petitioner. Laith Hassan's identification of Petitioner as the robber was not the only evidence connecting him to the crime. Other evidence indicated that Petitioner was involved, including testimony from accomplices, friends, and the victim. Laith Hassan was able to identify the mask and jacket the robber wore, which matched the description Jonathan Harrell offered of Petitioner's dress the day of the robbery. After the robbery, Petitioner possessed a large amount of cash, mainly in denominations stolen from the bookstore. Petitioner was found wearing new clothes and shoes and was in possession of a new X-Box. Petitioner's own statements also support the bulk of the timeline established by others who testified. In addition, Petitioner fails to show how testimony on trans-racial eyewitness identification would have made a significant difference in his case since the robber wore a mask, which a reasonable person would understand makes identification difficult, and Laith Hassan already correctly identified Robert Mosley, an African American man, as an accomplice at Kruse Main that morning. Therefore, it is not probable that the result of the proceeding

would have been different, meaning the jury would have had a reasonable doubt respecting Petitioner's guilt, but for trial counsel's failure to utilize an eyewitness identification expert who was knowledgeable on trans-racial recognition problems. *See Strickland*, 466 U.S. at 695.

In sum, relief under 28 U.S.C. § 2254(d)(1) is not warranted. Given the record, the Iowa courts did not unreasonably apply clearly established Federal law, that is, *Strickland*, 466 U.S. at 689-95.

### 3.     Motion for an Evidentiary Hearing—Eyewitness Identification Expert

Petitioner requests that the court wait to examine the issue of trial counsel's failure to obtain a trans-racial eyewitness identification expert. However, a hearing on this claim is unnecessary. "Federal courts may conduct evidentiary hearings and supplement the state record only in extraordinary circumstances. . . ." *Hall v. Luebbers*, 296 F.3d 685, 700 (8th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)). Under 28 U.S.C. § 2254(e)(2), the court must first determine "whether the factual basis was indeed developed in state court" or whether Petitioner failed to do so. *Williams v. Taylor*, 529 U.S. 420, 431 (2000). "[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432. First, "[d]iligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt . . . to investigate and pursue claims in state court." *Id.* at 435. "'[A] petitioner cannot be said to have 'failed to develop' relevant facts if he diligently sought, but was denied, the opportunity to present evidence at each stage of his state proceedings.'" *Johnston v. Luebbers*, 288 F.3d 1048, 1058 (8th Cir. 2002) (quoting *Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002)).

In the present case, Petitioner did not diligently seek to present this claim at every stage. In all but one of his briefs in the Iowa court, Petitioner merely pointed out that Laith Hassan and Petitioner were of different races and, due to this fact, an expert was needed. Apart from making such statement, Petitioner did nothing more to develop his

claim, though he was never denied the opportunity to do so by the Iowa courts. In the Iowa courts, Petitioner failed to investigate how an eyewitness identification expert with experience in trans-racial identification would consider his case. He never sought an expert to ascertain the kind of testimony such an expert could provide. Petitioner had numerous opportunities to bring in evidence on this issue to the Iowa courts, and he never chose to do so.

Second, "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams*, 529 U.S. 420 at 437. In the present action, Petitioner never requested an evidentiary hearing on the eyewitness identification expert issue until he requested one in his Reply Brief. Though he claimed ineffective assistance when trial counsel failed to call an eyewitness identification expert both on direct appeal and during post-conviction relief, Petitioner never asked the Iowa courts for an evidentiary hearing at which he could develop the record on this issue. This court is not "an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id.* at 437. An evidentiary hearing is not warranted based upon the opening clause of 28 U.S.C. § 2254(e)(2).

Since Petitioner failed to develop the factual basis of his claim in the Iowa courts, to prevail on his motion for an evidentiary hearing, he must show that the remaining requirements in 28 U.S.C. § 2254(e)(2) are met. In this case, neither party disputes the fact that Petitioner's claim is not based upon any new rule of constitutional law. *See* 28 U.S.C. § 2254(e)(2)(A)(i). Since this is not an issue, Petitioner must prove that his claim relies on (1) "a factual predicate that could not have been previously discovered through the exercise of due diligence," and (2) that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. §§ 2254(e)(2)(A)(ii)–(B).

First, Petitioner's claim does not meet the factual predicate requirement since his claim is based upon facts that could have been ascertained previously through the exercise of due diligence. Petitioner was aware that eyewitness identification experts existed before his direct appeal and post-conviction relief proceedings, but he did not take action to have such testimony added to the record. Second, the use of an eyewitness identification expert, particularly one with experience in trans-racial identification, would not have been sufficient to prove that, but for this omission, Petitioner would not have been found guilty of robbery in the first degree. The court agrees with the Iowa Court of Appeals that, "[g]iven the other strong evidence of [Petitioner's] involvement in planning and executing the crime, we do not believe the failure to call an identification expert to discredit the identification methodology affected the outcome of the trial." *Currie v. State*, No. 05-2107, 2006 WL 2560767, at *4 (Iowa Ct. App. Sept. 7, 2006). Since Petitioner fails to meet either the requirements of 28 U.S.C. § 2254(e)(2) or the remaining requirements in 28 U.S.C. § 2254(e)(2)(A) and § 2254(e)(2)(B), the court need not conduct an evidentiary hearing. Petitioner's Motion shall be denied.

Since Petitioner does not meet the requirements for an evidentiary hearing on the eyewitness identification issue, Petitioner's Motion for Two Weeks to File a Motion for Evidentiary Hearing and Supplemental Request for Advance Authorization for Expert, Investigative, or Other Services shall be denied.

### D. *Ineffective Assistance of Trial Counsel—False Testimony*

Petitioner contends that he received ineffective assistance because trial counsel allowed him to provide false testimony. In support of his claim, Petitioner argues that he told trial counsel before trial that he knew it was Robert Mosley who had actually committed the robbery and that Robert Mosley had threatened Petitioner and his family if he went to the authorities with the information. When testifying at trial, Petitioner denied any involvement with the robbery. However, when trial counsel questioned Petitioner regarding his knowledge of who actually committed the crime, Petitioner stated he did not

know. Petitioner claims that, when his trial counsel allowed him to testify falsely, trial counsel was "failing to perform the essential duty of eliciting truthful testimony" from Petitioner. Petitioner's Merits Brief at 9.

In response, Respondent argues that Petitioner is trying to "convert his criminal act of perjury into a claim of ineffectiveness by asserting that his trial attorney should have known he would lie [when] asked if he knew who committed the robbery." Respondent's Merits Brief at 35. According to trial counsel, Petitioner had given inconsistent statements about who committed the robbery, and he never provided trial counsel with the name of the real robber before trial. Trial counsel also made it clear to Petitioner that taking the stand was a risk and he had to be extremely careful in what he said. Respondent notes that, during trial counsel's deposition, he was adamant that he would not have allowed Petitioner to make statements he knew were not true. Respondent argues trial counsel cannot be responsible for Petitioner's decision not to share the name of the person whom he believed committed the crime. Additionally, Respondent claims that Petitioner's decision to say that Robert Mosley was the real robber in his post-conviction proceeding is a "self-serving recantation" and illogical. *Id*. Respondent contends that the Iowa courts did not unreasonably reject Petitioner's claim on this issue.

### 1. Exhaustion/Procedural Default

On direct appeal, Petitioner asserted that he received ineffective assistance when trial counsel allowed him to perjure himself. Rather than address such claim, the Iowa Court of Appeals preserved it for post-conviction relief so that trial counsel could defend himself. During the post-conviction relief proceeding, Petitioner continued to claim ineffective assistance of counsel for allowing him to give false testimony. However, the Iowa District Court concluded that Petitioner failed to meet either prong of the *Strickland* test.

Petitioner appealed this issue, but the Iowa Court of Appeals found that Petitioner never told his trial counsel that Robert Mosley committed the robbery and that trial counsel

advised Petitioner against testifying because of the inconsistencies on the issue of who committed the robbery. The Iowa Court of Appeals deemed "credible trial counsel's testimony on this issue" and found "neither a breach of duty by trial counsel nor prejudice resulting from trial counsel's question or [Petitioner's] answer." *Currie v. State*, No. 05-2107, 2006 WL 2560767, at *5 (Iowa Ct. App. Sept. 7, 2006). Petitioner applied for further review of this issue with the Iowa Supreme Court, but his application was denied. The court concludes that Petitioner exhausted his Sixth Amendment claim, which is based on trial counsel allowing him to falsely testify.

### 2.    *Merits*

Again, Petitioner has neither overcome the strong presumption that the conduct of counsel fell "within a wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, nor shown that any deficiencies in counsel's performance prejudiced his defense, *id*. at 692-94. With respect to trial counsel's actions in the present case, they fall well within the realm of reasonableness. Under *Strickland*, the court's review must be "highly deferential" without "the distorting effects of hindsight." *Id*. at 689. "A claim of ineffective assistance cannot be based on decisions that relate to a reasoned choice of trial strategy, even when it later may be shown improvident." *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995) (citing *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. 1985)).

Under the first prong, Petitioner must show that trial counsel was deficient in performing an essential duty. Here, Petitioner argues trial counsel allowed him to falsely testify. Proving deficiency "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The record shows that trial counsel takes the issue of ethics very seriously, and he would not "put a witness on the witness stand that [he expected] to perjure himself." PCR Appeal Appendix at 284. Trial counsel questioned whether Petitioner should take the stand, but Petitioner insisted on testifying, which he had a constitutional right to do. *See Berkovitz v. Minnesota*, 505 F.3d 827, 828

38

(8th Cir. 2007) (citing *Rock v. Arkansas*, 483 U.S. 44, 49-53 (1987)). However, "[w]hatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying *falsely*," *Nix v. Whiteside*, 475 U.S. 157, 173 (1986) (emphasis in original), and, "'[h]aving voluntarily taken the stand, petitioner was under an obligation to speak truthfully. . . ." *Id.* (quoting *Harris v. New York*, 401 U.S. 222, 225 (1971)). Petitioner elected to testify and freely chose to lie on the witness stand, which his trial counsel did not know would occur. This cannot be an error on trial counsel's part.

In fact, trial counsel did not know for sure how his client would testify. Petitioner's claims about who committed the robbery were inconsistent in that he denied knowing who was involved in the robbery until very shortly before the trial when, on only one occasion according to trial counsel's deposition, he told his attorney that he did know who did it but refused to give a name or say anything more. However, Petitioner's trial counsel made a strategic decision to ask Petitioner about his involvement in the robbery and whether he knew who had committed the crime because trial counsel knew that a jury wants answers to those kinds of questions. Given those reasons, the court concludes that the Iowa courts did not unreasonably apply federal law when they determined that trial counsel did not allow Petitioner to falsely testify and made informed and reasoned decisions regarding trial strategy. *See Strickland*, 466 U.S. at 689.

Additionally, trial counsel's questions did not prejudice Petitioner. Considering all of the evidence in the record, nothing indicates that Petitioner's false testimony prejudiced him. To prove prejudice, "[Petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this case, Petitioner's accusation of prejudice is entirely speculative, particularly in light of the extensive evidence of his guilt. Additionally, in his Merits Brief, Petitioner makes no valid claim of how he was prejudiced.

Petitioner chose to lie on the witness stand, and under Iowa law, "it is elementary a litigant cannot complain of error which he has invited or to which he has assented." *Hackman v. Beckwith*, 64 N.W.2d 275, 281 (Iowa 1954). Therefore, it is not probable that, but for trial counsel's alleged failure in allowing Petitioner to perjure himself, the result of the proceeding would have been different, that is, the jury would have had a reasonable doubt respecting Petitioner's guilty. *Strickland*, 466 U.S. at 695.

In sum, relief under 28 U.S.C. § 2254(d)(1) is not warranted. Given the record, the Iowa courts did not unreasonably apply clearly established Federal law, that is *Strickland*, 466 U.S. at 689-95.

## VII. CERTIFICATE OF APPEALABILITY

In a habeas proceeding before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. *See* 28 U.S.C. § 2253(a). Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. *See* 28 U.S.C. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may only issue if a petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)); *see also Miller-El*, 537 U.S. at 335-36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [petitioner must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that Petitioner failed to make the requisite "substantial showing" with respect to the claims he raised in his Application pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because there is no debatable question as to the resolution of this case, an appeal is not warranted. Accordingly, the court shall not grant a certificate of appealability pursuant to 28 U.S.C. § 2253.

If Petitioner desires further review of his 28 U.S.C. § 2254 Application, he may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520-22.

## VIII. CONCLUSION

In sum, the court finds that Petitioner is not entitled to relief pursuant to 28 U.S.C. § 2254. The Petitioner's claims are procedurally barred, and/or the Iowa courts' adjudication of Petitioner's claims neither resulted in a decision contrary to, nor involved an unreasonable application of, clearly established federal law. Nor was Petitioner's conviction based on an unreasonable determination of the facts in light of the evidence introduced in the Iowa District Court. Accordingly, Petitioner's Application (docket no.

1) is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Respondent. A certificate of appealability is **DENIED**. Petitioner's Motion for Two Weeks to File a Motion for Evidentiary Hearing (docket no. 29), Motion (docket no. 31) and Supplemental Request for Advance Authorization for Expert, Investigative, or Other Services (docket no. 34) are **DENIED**.

      **IT IS SO ORDERED.**

      **DATED** this 13th day of August, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA